674 P.2d 310

Michelle Marie O'HARA, Petitioner,

v.

The SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF NAVAJO, and The Honorable Melyvn T. Shelley, a judge thereof; and Jay Flake, et al., Real Parties in Interest, Respondents.

No. 17061–SA.

Supreme Court of Arizona, In Banc.

Nov. 10, 1983.

Ernesto R. Castro, Sedona, for petitioner.

Jay V. Flake, Navajo County Atty. by Thomas L. Wing, Deputy County Atty., Holbrook, for respondents.

GORDON, Vice Chief Justice:

On June 24, 1981 petitioner Michelle Marie O'Hara was involved in a traffic accident that resulted in $770 damage to the other party's vehicle. O'Hara was uninsured at the time. Because she failed to comply with Arizona's financial responsibility laws in effect at the time of the accident, (*see* A.R.S. §§ 28–1142 to –1143, –1167, all of which were repealed by Laws 1982, ch. 298, § 5, effective January 1, 1983), O'Hara's operator's license was suspended, effective August 31, 1981.

On January 9, 1983, O'Hara was seen in Holbrook driving in an erratic manner. She was stopped and was found to be under the influence of intoxicants. Because she was driving on a suspended license, she was charged with a violation of A.R.S. § 28–692.02, which provides, in part, that:

"A person whose operator's or chauffeur's license is suspended, cancelled, revoked or refused and who commits an offense in violation of § 28–692 during the period of such suspension, cancellation, revocation or refusal, or a person who has never applied for or obtained an operator's or chauffeur's license or a person who has never reapplied for or obtained such license after suspension, cancellation, refusal or revocation pursuant to § 28–691 or § 28–692.01, who commits a second offense in violation of § 28–692, is guilty of a class 5 felony and shall be sentenced to serve not less than six months in prison."

A.R.S. § 28–692.02(A).

Trial was set for April 14, 1983. O'Hara filed a motion to dismiss. She argued that A.R.S. § 28–692.02 did not apply to her because there was no evidence that she had previously been convicted of driving while intoxicated. The state opposed the motion. In a formal order entered on April 14, the trial court denied the motion to dismiss. O'Hara filed this special action on August 5 on the ground that the trial court's denial of her motion to dismiss was arbitrary, capricious and an abuse of discretion. *See* Ariz.R.P.Sp.Act. 3.

We accepted this special action in order to examine and clarify A.R.S. § 28–692.02. This section has undergone several changes since it was enacted in 1972 and it is our duty to give the public a clear statement of the scope and meaning of statutes. *White v. Bateman*, 89 Ariz. 110, 358 P.2d 712 (1961). Jurisdiction is found pursuant to the Ariz. Const. art. 6, § 5(a) and Ariz.R.P. Sp.Act. 8. The following two questions are presented by this special action:

(1) Does A.R.S. § 28–692.02 apply to a person who commits her first offense of driving while intoxicated during the period in which her license is suspended?

(2) Does A.R.S. § 28–692.02 apply to a person whose license was suspended for failure to comply with Arizona's financial responsibility laws?

I. DOES A.R.S. § 28–692.02 APPLY TO A PERSON WHO COMMITS HER FIRST OFFENSE OF DRIVING WHILE INTOXICATED DURING THE PERIOD IN WHICH HER LICENSE IS SUSPENDED?

O'Hara contends that, broken down into its parts, A.R.S. § 28–692.02(A) must be read to say:

(1) A person whose * * * license is suspended * * * and who commits an offense in violation of § 28–692 during the period of such suspension * * *, who commits a second offense in violation of § 28–692 is guilty of a class 5 felony * * ; and

(2) A person who has never applied for or obtained a * * * license * * *, who commits a second offense in violation of § 28–692 is guilty of a class 5 felony * * ; and

(3) A person who has never reapplied for or obtained such license after suspension * * * pursuant to § 28–691 or § 28–692.01, who commits a second offense in violation of § 28–692 is guilty of a class 5 felony * * *.

This reading, O'Hara says, is required by the statute's grammatical structure and punctuation. Because a comma separates the three categories of offenders from the phrase "who commits a second offense in violation of § 28–692," that language, her argument goes, must apply to each of the three categories of persons mentioned in the statute. In support of this position, O'Hara says the Legislature could not have intended to distinguish between the categories of persons in § 28–692.02; with each, a violation of § 28–692 is prerequisite to an action under § 28–692.02. The statute, O'Hara claims, is "patently clear."

As an alternative argument, however, O'Hara asserts that if the Court finds that the proposed construction of § 28–692.02 is not "patently clear," then it must find that § 28–692.02 is "so unclear" that it is unconstitutionally vague and therefore in violation of A.R.S. § 13–101(2).[1]

The state agrees that A.R.S. § 28–692.02 is clear. However, it contests O'Hara's reading on the ground that her reading renders the phrase "and who commits an offense in violation of § 28–692 during the period of such suspension" meaningless and superfluous. In light of the established presumption in this state that each provision in a statute has a meaning and purpose, the state claims that A.R.S. § 28–692.-02, properly read, provides that:

(1) A person whose * * * license is suspended * * * and who commits an offense in violation of § 28–692 during the period of such suspension, * * * is guilty of a class 5 felony * * *, and

(2) a person who has never applied for or obtained a * * * license or a person who has never reapplied for or obtained

such license after suspension * * * pursuant to § 28–691 or § 28–692.01, who commits a second offense in violation of § 28–692, is guilty of a class 5 felony * *.

The state argues that the Legislature obviously intended that a person who commits a violation of § 28–692 during a period of suspension is guilty of a class 5 felony whether or not that person has committed a previous offense in violation of § 28–692. The state also argues that the legislative intent to distinguish persons who drive while drunk during the period in which their licenses are suspended from persons who drive while drunk even though they have never applied for or obtained a license or reapplied for a license after a period of suspension has expired is clear. In support of its position, the state cites *State v. Geschwind*, 136 Ariz. 360, 666 P.2d 460 (1983). In that case, the defendant was arrested on November 6, 1981 and charged with both DWI on a suspended license and DWI without a license pursuant to the version of A.R.S. § 28–692.02 in effect at that time.[2]

The state admits that *Geschwind* was concerned with A.R.S. § 28–692.02 as it existed in 1981, but submits that the 1982 amendments did not affect any substantive changes. Instead, the Legislature made two simple additions. First, it added "cancelled" to the types of actions taken against a license that will subject the holder of such a license to the rigors of § 28–692.02 if she commits a DWI. Second, it added persons who "never reapplied for or obtained a license after suspension, cancellation, revo-

---

1. In A.R.S. § 13–101(2), the Legislature declared that "the public policy of the state and the general purposes of the provisions of [the criminal code] are * * * [t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction."

2. On November 6, 1981, A.R.S. § 28–692.02 provided that: "A person whose operator's or chauffeur's license is suspended, revoked or refused and who commits the offense of driving

a vehicle while under the influence of intoxicating liquor or drugs during the period of such suspension, revocation or refusal, or a person who has never applied for or obtained an operator's or chauffeur's license who commits a second offense of driving while under the influence of intoxicating liquor or drugs, is guilty of a class 6 felony." Laws 1978, ch. 201, § 469. Because the language in that version of A.R.S. § 28–692.02 was clear, we did not delve into its meaning in *Geschwind.*

cation or refusal pursuant to § 28–691[3] or § 28–692.01." [4]

■ Though the Legislature could have used more care in making its most recent amendments to A.R.S. § 28–692.02, we find the statute susceptible to a sensible construction and will not, therefore, declare it invalid. *State v. Valenzuela,* 116 Ariz. 61, 567 P.2d 1190 (1977); *Adams v. Industrial Commission,* 26 Ariz.App. 289, 547 P.2d 1089, *vacated on other grounds,* 113 Ariz. 294, 552 P.2d 764 (1976). In light of both the structure of § 28–692.02 and prior versions of § 28–692.02, we hold that A.R.S. § 28–692.02 applies to a person charged with his or her first DWI offense during a period of suspension.

■ We agree with the state's argument that O'Hara's reading is improper because it would render part of A.R.S. § 28–692.02 meaningless and superfluous. If the phrase "who commits a second offense in violation of § 28–692" was intended to apply to "a person whose operator's license was suspended, cancelled, revoked or refused", the phrase "and who commits an offense in violation of § 28–692" would be, at best, redundant. In interpreting statutes, we assume the Legislature avoids redundancy in favor of concision. *State v. Wise,* 137 Ariz. 468, 671 P.2d 909 (1983); *State v. Edwards,* 103 Ariz. 487, 489, 446 P.2d 1, 3 (1968) ("The presumption is that legislatures do not include in statutes provisions which are redundant, void, inert and trivial.").

■ Examination and comparison of the 1978 and 1982 versions of A.R.S. § 28–692.-02 lead us to conclude that the 1982 amendments were intended to fill in gaps that emerged upon application of the 1978 version. By adding "cancelled" to the statute, the Legislature expressed its determination that a person who drives while intoxicated on a license that has been cancelled deserves the same punishment as a person who drives while intoxicated on a license that has been suspended, revoked or refused.[5] In each case, the person is driving notwithstanding a Department of Transportation order forbidding him or her to do so. A person whose license has been cancelled, rather than suspended, revoked or refused, can no longer escape the rigors of § 28–692.02 though that person could have done so based on a literal application of the 1978 version of the statute. By adding "a person who has never reapplied for or obtained [an operator's] license after suspension, cancellation, refusal or revocation pursuant to § 28–692 or § 28–692.01," the Legislature expressed its determination that a person within that category, who drives while intoxicated, is just as deserving of punishment as a person who drives while intoxicated without having applied for or obtained a license in the first place. The fact that the new category of persons was incorporated in the section of the statute dealing with persons who "never applied for or obtained a license", without any punctuation separating the two, shows that the Legislature intended to treat those categories of persons similarly. With both, a prior DWI conviction is prerequisite to a charge under § 28–692.02. The amendments to the 1978 version did not alter the legislative determination that a person who commits his or her first DWI on a suspended license has committed felony DWI. The "second offense of DWI" applies only to persons who never applied for or obtained a license and persons who never reapplied for or obtained a license after suspension, cancellation, revocation or refusal pursuant to §§ 28–691 or 28–692.02.

---

**3.** A.R.S. § 28–691 states that the Department of Transportation "shall suspend for a period of twelve months" the license of any person under arrest "for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor," who "refuses to submit to a [blood, breath or urine test to determine the alcohol content of his blood]." § 28–691(A) and (D).

**4.** § 28–692.01 authorizes suspension of drivers' licenses for a person's first, and subsequent, DWI convictions.

**5.** We note that A.R.S. § 28–692.02 is limited to situations where an operator's license has been suspended, cancelled, revoked or refused. The Legislature has not extended felony DWI to include a person who drives while intoxicated on a license which has expired.

O'Hara argues that the Legislature could not have intended to distinguish persons who drive while their licenses are suspended, cancelled, refused or revoked from persons who drive though they have never applied for nor obtained a license, or reapplied for or obtained a license after their licenses had been suspended, cancelled, revoked or refused pursuant to § 28–691 or § 28–692.01. That argument is without support or merit. The statute does, as we stated above, distinguish these two categories and we find the distinction reasonable.

Persons who drive notwithstanding suspension, cancellation, revocation, or refusal of their right to do so are acting in clear defiance of Department of Transportation orders. On the other hand, persons who drive without having applied for or obtained licenses in compliance with Arizona law are not. Such persons are acting in violation of the general law, but they are not acting in defiance of orders directed specifically to them. We find that the legislative decision to apply different prerequisites to these two classes is reasonable and, therefore, in compliance with law. *See State v. Sanchez*, 110 Ariz. 214, 516 P.2d 1226 (1973) (§ 28–692.02 does not violate due process because classification is neither arbitrary nor unreasonably defined and the state has valid and continuing interest in maintaining it.).

We hold that A.R.S. § 28–692.02, as amended by Laws of 1982, ch. 234, § 9, creates the crime of felonious DWI and sets out two ways in which it can be committed. First, a person commits felony DWI if that person drives while intoxicated during the period in which his or her operator's or chauffeur's license is suspended, cancelled, revoked or refused.[6] Second, a person commits felony DWI if he or she commits a second DWI before applying for or obtaining a license as required by Arizona law, *see* A.R.S. § 28–411 *et seq.*, or reapplying for or obtaining a license that had been taken away for offenses related to driving while intoxicated. In the first, a person's initial DWI offense will trigger application of § 28–692.02; in the second, a person must have a prior DWI conviction to trigger application of A.R.S. § 28–692.02. Because O'Hara appears to fall within the first category, the absence of a prior DWI conviction does not render erroneous the charge under A.R.S. § 28–692.02.

## II. DOES A.R.S. § 28–692.02 APPLY TO A PERSON WHOSE LICENSE WAS SUSPENDED FOR FAILURE TO COMPLY WITH ARIZONA'S FINANCIAL RESPONSIBILITY LAWS?

In its 1982 amendments to A.R.S. § 28–692.02, the Legislature added subsection (B), effective July 24, 1982. Subsection (B) provides that "[t]he suspension, cancellation, revocation or refusal of an operator's or chauffeur's license is effective as provided in § 28–446." *See* Laws 1982, ch. 234, § 9.

A.R.S. § 28–446, "Authority of Department [of Transportation] to suspend or revoke license or require attendance at driver improvement school," at the time of O'Hara's charge, provided in part that:

"A. The department may suspend the license of an operator or chauffeur or require any licensee to attend and successfully complete approved training and educational sessions designed to improve the safety and habits of drivers, upon a showing by the department's records or other sufficient evidence that the licensee:

"1. Has committed an offense for which mandatory revocation of license is required upon conviction.

"2. Has been involved as a driver in an accident resulting in the death or per-

---

**6.** At the time O'Hara was charged with a violation of A.R.S. § 28–692.02, the statute did not apply to out-of-state licenses. *Geschwind, supra; State v. Mitchell*, 136 Ariz. 364, 666 P.2d 464 (1983). This is no longer the case. Effective July 27, 1983, "license" within the statute means "any license, temporary instruction permit or temporary license issued under the laws of this state or any other state pertaining to the licensing of persons to operate motor vehicles." *See* Laws 1983, ch. 279, § 4.

sonal injury of another or serious property damage.

"3. Has been convicted with such frequency of serious offenses against traffic regulations governing the movement of vehicles as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways.

"4. Has been convicted of reckless driving as provided in § 28–693 or is an habitually reckless or negligent driver of a motor vehicle.

"5. Is incompetent to drive a motor vehicle.

"6. Has committed or permitted any act involving an unlawful or fraudulent use of the license.

"7. Has committed an offense in another state which if committed in this state would be grounds for suspension or revocation.

"8. Has been convicted of a violation of § 28–692.

"9. Has refused to submit to tests required by § 28–691." [7]

■ O'Hara was arrested for her first DWI on January 9, 1983. Therefore, she is subject to § 28–692.02 only if her license

had been suspended on one of the grounds enumerated in § 28–446. Because O'Hara's license was suspended for failure to comply with the financial responsibility laws in effect at the time her license was suspended (*See* A.R.S. § 28–1142, repealed by Laws 1982, ch. 298, § 5, effective January 1, 1983), and such failure is not one of the grounds enumerated in § 28–446, O'Hara cannot be properly charged with a violation of § 28–692.02.[8] We hold that the trial court erred in failing to dismiss the charge under A.R.S. § 28–692.02 because O'Hara *did not fall within the classes of persons subject to it.* O'Hara's request that the charge be dismissed with prejudice is granted.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**7.** A.R.S. § 28–446 was amended several times during 1983. *See* Laws 1983, ch. 66, § 3, ch. 271, § 13, and ch. 279, § 1. As noted above, § 28–692.02(B) says "[t]he suspension, cancellation, revocation or refusal of an operator's or chauffeur's license is effective as provided in § 28–446." Though § 28–446 provides grounds upon which the Department of Transportation may suspend or revoke a license, it does not provide grounds for cancellation or refusal of the same. Because O'Hara's license was suspended, rather than cancelled or refused, § 28–692.02 clearly applies to her as long as the suspension was imposed pursuant to § 28–446. Had O'Hara's license been cancelled or refused, however, § 28–692.02(B) would apparently preclude application of § 28–692.02(A). We leave it to the Legislature to clarify this paradox.

**8.** As noted at the outset, the accident that triggered suspension of O'Hara's license resulted in

$770 damage to the other party's vehicle. The fact that O'Hara's license could have been suspended pursuant to § 28–446(A)(2) upon a finding by the Department of Transportation that $770 property damages is "serious" is irrelevant. We cannot retroactively change the grounds for suspension of O'Hara's license and assume that she would not have responded differently to a proposed suspension for failure to comply with § 28–446. To do so would violate O'Hara's right to due process as provided in § 28–446(B), *State v. Parra,* 119 Ariz. 201, 580 P.2d 339 (1978), and would necessitate an unwarranted interference in the affairs of the Department of Transportation. On June 24, 1981, the date of O'Hara's accident, the Department of Transportation was authorized to suspend operator's licenses pursuant to Arizona's financial responsibility laws and pursuant to A.R.S. § 28–446. It chose to suspend O'Hara's license pursuant to the former. We will not second guess its decision.