731 P.2d 638

**STATE of Arizona, Appellant,**

v.

**David T. JOHNSTON, Appellee.**

**No. 1 CA–CR 10070.**

Court of Appeals of Arizona,
Division 1, Department C.

Jan. 8, 1987.

---

Stephen G. Udall, Apache Co. Atty. by Kevin H. Maricle, Deputy Co. Atty., St. Johns, for appellant.

David A. Brown, St. Johns, for appellee.

## OPINION

MEYERSON, Judge.

Appellee was charged by information with driving a motor vehicle while under the influence of intoxicating liquor while his operator's or chauffer's license was suspended, cancelled, rejected, or refused, a class 5 felony, in violation of A.R.S. § 28–692.02. Although appellee had a valid Montana driver's license at the time he was stopped, the prosecution under A.R.S. § 28–692.02 was based on a prior license revocation in Colorado.

Because he held a valid Montana license, appellee moved to dismiss the charges. The state argued that if appellee had any license that was suspended, revoked, or refused, he was subject to prosecution under A.R.S. § 28–692.02, even though he also had in his possession a valid driver's license from another state.

The state also suggested that because Montana and Colorado were members of the Interstate Driver's License Compact (Compact), A.R.S. §§ 28–1601 to –1605, Montana should have suspended appellee's license. The state admitted that it was unknown why the Montana license was allowed to remain in force after the Colorado revocation. In any event, the state argued, Montana's failure to adhere to the driver's license compact did not prevent appellee's prosecution because his Colorado license had been revoked.

The trial court found that appellee had a valid Montana driver's license and there was no evidence of the grounds of revocation in Colorado or whether appellee had notice of that revocation. The trial court concluded that "in any event at the time of this offense [appellee] was complying with A.R.S. § 28–411, i.e., he was operating [a

vehicle with] a valid and unrevoked Montana license."

The state first argues that the reference to "license" in A.R.S. § 28–692.02 is broad enough to include appellee's revoked Colorado license. The statute makes it illegal to drive under the influence of alcohol "while the person's operator's or chauffeur's license is suspended, cancelled, revoked, or refused in violation of a restriction placed on a operator's or chauffeur's license as a result of violating § 28–692." A.R.S. § 28–692.02(A)(1) (Supp.1986). The word "license" in A.R.S. § 28–692.02 has been interpreted to include the privilege afforded by the State of Arizona to nonresidents allowing them to drive on Arizona highways with valid out-of-state licenses. *State v. Mitchell,* 136 Ariz. 386, 666 P.2d 486 (App.1982), *aff'd,* 136 Ariz. 364, 666 P.2d 464 (1983). This court has previously held that A.R.S. § 28–692.02 applies to persons whose out-of-state licenses have been suspended, cancelled, or revoked by the issuing state. *State v. Kozlowski,* 143 Ariz. 137, 692 P.2d 316 (App.1984).

■ The difference between this case and the situations addressed in *Mitchell* and *Kozlowski,* however, is that here appellee had a valid Montana license at the time he was stopped. Under A.R.S. § 28–412(A)(4), a nonresident who possesses a valid out-of-state operator's license is authorized to drive on Arizona highways. In this case, therefore, appellee was "licensed" within the meaning of A.R.S. § 28–692.02 at the time he was stopped. *See State v. Mitchell.*

■ A requisite element of a violation of A.R.S. § 28–692.02 is driving without a valid license. Furthermore, in order to prove this element, the state must show "a 'culpable mental state.' The state must show that the driver knew or should have known that the license had been suspended." *State v. Williams,* 144 Ariz. 487, 489, 698 P.2d 732, 734 (1985). Under authority of A.R.S. § 28–442, Arizona could have revoked appellee's nonresident privilege to operate his vehicle in Arizona under his valid Montana license. *See State v. Mitchell.* There is no evidence, however, that his

nonresident driving privileges were not in force at the time he was stopped. Additionally, under the Compact, Montana could have revoked appellee's valid Montana license because of the revocation of his Colorado license, but it did not do so. Accordingly, we cannot conclude that Johnston was driving without a valid license at the time he was stopped, nor can we find that the state showed the requisite intent.

The state next argues that because Arizona, Montana, and Colorado are all signatories to the Compact, Johnston can be prosecuted in Arizona on the basis of his revoked Colorado license, even though Montana failed to suspend his privileges. We disagree.

Arizona, Montana, and Colorado are all signatories to the Compact. The signatory states are responsible for apprising each other of actions taken under this interstate agreement. *See* A.R.S. § 28–1603. In Arizona, for example, receipt of information from another state pursuant to the Compact permits Arizona to suspend a person's license upon a showing by records or other sufficient evidence that the licensee had committed an offense in another state which if committed in this state would be grounds for suspension or revocation. A.R.S. § 28–446(A)(7). However, such a suspension would only be valid upon notification to the driver in writing, after affording him an opportunity for a hearing. A.R.S. § 28–446(B). In the absence of any affirmative action to provide another state with information regarding a conviction, the driver's home state would have no occasion to notify the driver of the impending suspension of his license.

In *People v. Eberhardt,* 138 Ill.App.3d 148, 92 Ill.Dec. 830, 485 N.E.2d 876 (1985), a defendant was arrested in Illinois and charged with driving while intoxicated with a revoked license. However, his Texas license was valid and Illinois authorities had failed to report the defendant's prior conviction or revocation to Texas authorities. The court found that the notification requirements were critical to a subsequent prosecution for driving on a suspended or revoked license. Because neither the Texas license nor the defendant's privileges

**276**

thereunder to drive as a nonresident motorist in Illinois had been affected by the revocation of the defendant's previously expired Illinois license, the court held that the defendant had a right to drive in Illinois. The court concluded that although the Illinois license was revoked, the defendant's nonresident privileges to drive in the State of Illinois were in force under his Texas license, which had never been revoked as a result of the Illinois conviction or suspension. *See also, State v. Churchill,* 180 Ind.App. 349, 388 N.E.2d 586 (1979).

■ In this case, the state presented no evidence to rebut the undisputed evidence that appellee was driving with a valid Montana driver's license. Although states that have signed the Compact can be expected to follow the purposes and requirements of the act, where they fail to do so, in a case such as this, we hold that a person's license remains valid until the driver is properly notified of the revocation and provided with an opportunity for hearing.

The trial court's ruling is affirmed.

SHELLEY and JACOBSON, JJ., concur.